UNITED STATES *v.* NELSON & SONS (No. 2971)[1]

United States Court of Customs Appeals, November 14, 1927

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. Canty*, special attorney, of counsel), for the United States.
*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellee.

[Oral argument October 4, 1927, by Mr. Lawrence and Mr. Lane]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appelleee imported certain unbound Spanish-English dictionaries which it entered as books and pamphlets printed wholly or chiefly in languages other than English and as such free of duty, under paragraph 1529 of the Tariff Act of 1922. The collector classified these for duty as unbound books of *bona fide* foreign authorship, under paragraph 1310 of said act, at 15 per centum ad valorem. The pertinent language of said paragraphs is as follows:

PAR. 1529. Books and pamphlets printed wholly or chiefly in languages other than English; * * *.

PAR. 1310. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly. or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; * * *.

The importer protested, claiming the merchandise to be free, as entered, under said paragraph 1529, or, in the alternative, at 10 per centum ad valorem, as an unenumerated manufactured article, under

[1] T. D. 42465.

paragraph 1459, or by similitude under paragraph 1460, of said act. The report of the local appraiser, in answer to said protest, states: "The merchandise in question consists of books not bound wholly or in part of leather, of bona fide foreign authorship." The cause was submitted to the court below on the record and a sample. The Customs Court sustained the protest under said paragraph 1529, claiming to do so on the authority of *United States* v. *Petry*, 11 Ct. Cust. Appls. 240. From that judgment, the Government has appealed.

The sample shows the merchandise to be pocket size, unbound paper books, each consisting of 896 printed pages, which books are shown and conceded to be of bona fide foreign authorship. Upon the first title page appears the language: "Spanish-English and English-Spanish." The second and third title pages describe the contents of the volume as a pocket dictionary of the Spanish and English languages, with a memorandum of its contents, the second page being in Spanish and the third in English. Page IV contains a preface in English, page V general rules of accentuation, in English, page VI the character, names, and pronunciation of the Spanish alphabet, in English, page VII abbreviations, in English and Spanish, and page VIII an advertisement, in English, of certain other books on similar subjects. Following this, and constituting 504 pages, is a Spanish-English dictionary, consisting of an alphabetical list of Spanish words, each followed by its English equivalent. Following this, 339 pages, is an English-Spanish dictionary, consisting of an alphabetical list of English words, each followed by its Spanish equivalent. Then follows a list of proper names, each given in Spanish and English, paradigms of the regular Spanish verbs, a list of irregular English verbs, each with its infinitive, imperfect, and participle, paradigms of Spanish irregular verbs, a list of Spanish irregular verbs, the English weights and measures, in English, the Spanish weights and measures, in English, commercial phrases in English and Spanish, Spanish abbreviations, largely in Spanish, and Spanish proverbs, in Spanish and English. All the superscriptions in the book are in English.

*United States* v. *Petry, supra,* is cited as authority in support of the judgment of the court below. The case cited concerned an importation of books under the tariff act of October 3, 1913. Two opinions were filed in that case, three members of the court concurring in the majority opinion handed down by Martin, J. A special concurring opinion was delivered by Smith, J., who, although concurring in the result, did so for different reasons from those announced in the majority opinion. The Customs Court, in the case at bar, quote from said concurring opinion the following language:

* * * we are forced to the conclusion that the phrase "books * * * chiefly in a language other than English" means books *whose chief worth or value*

*to the reader* is the foreign-language component thereof; that is to say, books of which the foreign language is the *main, principal, and important part,* and to which books the English language used is incidental, or subsidiary, or merely explanatory of words or portions of the foreign text. (Italics ours.)

Basing its judgment upon said language, the Customs Court thereupon holds that the books now before us, being, as it conceives, books "whose chief worth or value to the reader is the foreign-language component thereof," should be classified as books printed wholly or chiefly in a language other than English.

We are of opinion this is a misconception of the extent of the holding of this court in the Petry case. The judgment of the court must be held to have been expressed in the majority opinion filed and not in the special concurring opinion, which may, or may not, have expressed the judgment of a majority of the court. An examination of the said majority opinion shows that the court was not basing its decision upon grounds stated in the quoted portion of the special concurring opinion.

The books in the *Petry* case were known as "Brentano's Bilingual Series," and consisted of volumes, each containing a story or other literary material either in English or a foreign language, together with a literal translation thereof into a second language, one translation in each book being in English, the two being printed in parallel lines upon opposite pages of the book. The two outside pages of each volume, upon which were printed the name of the work, together with brief descriptions and advertisements thereof, as well as the publisher's imprint, were printed in English.

These books were claimed to be free under paragraph 426 of the free list of the tariff act of October 3, 1913, which reads, in part, as follows: "Books and pamphlets printed wholly or chiefly in languages other than English." They were classified as "books of all kinds, bound or unbound, * * * and not specially provided for," under paragraph 329 of said act.

This court, in passing upon the claim that the books in question were printed wholly or chiefly in a language other than English, said:

We are not able to agree with this conclusion. We do not consider it necessary in this case to examine narrowly into the exact force and effect which should be given to the tariff provision now in question, for we think that whatever interpretation might be placed upon that provision it must be said that a volume like those above described would be equally divided between the two contrasting languages composing it and therefore could not fairly be said to be printed chiefly in either. In this view free entry must be denied the importations, since that right is limited to books which are printed not equally but wholly or chiefly in languages other than English.

We may also refer again to the English print upon the first and last pages of the coverings of the respective volumes, for we think that if these pages be taken into account the competing languages in each volume would not stand at a balance, but that the scales would incline against the foreign print in each.

The same reasoning is applicable here. The importer, having claimed in his protest that the books in question are wholly or chiefly in languages other than English, has upon him the burden of maintaining this claim. To support it, he has offered only the sample. This sample, as in the *Petry* case, shows, if anything, a preponderance of English in the printing of the book, and hence the importer has not maintained his protest in that regard.

It is argued that we should adopt the theory expressed in the concurring opinion in the *Petry* case and that if we should do so it would be found that the chief worth or value of the books in question is the foreign language component thereof. It will be observed that paragraph 1529, under which free entry is claimed, designates "Books or pamphlets *printed* wholly or chiefly in languages other than English." Unless we are to disregard the plain meaning of this language, the question in each case must be not what the books are to be used for, or how useful they may be, but how they are *printed*. The Congress has made this the test and we are not at liberty to substitute some other. If they are *printed* wholly or chiefly in languages other than English, they are free; if not, they are dutiable. This does not mean that in case of bilingual books, where words, sentences, stories, or other literary productions are printed in two languages, the exact number of letters or words used to express the same thought must be counted to ascertain whether the book be chiefly printed in one or the other language. If the same thought be expressed by ten words in one language and by six in another, nevertheless, the language must, for the purposes of this act, be held to be the same and to predominate in favor of neither.

We are of opinion the importer has failed to support his protest and that the court below erred in sustaining the same. The judgment of the Customs Court will therefore be reversed and the cause remanded with instructions to overrule the protest.

*Reversed* and *remanded*.

BARBER, J., took no part.